UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LISA TAYLOR,

Plaintiff,

v.

MARKET TRANSPORT LTD.,

Defendant.

CASE NO. C 08-5705 KLS

ORDER GRANTING MARKET TRANSPORT LTD. MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on summary judgment motions of the Defendant Market Transport Ltd. (MTL) (Dkt. 33) and the Plaintiff Lisa Taylor. Dkt. 36. Having reviewed the pleadings and for the reasons set forth below, the Court concludes that the Plaintiff's cross-motion should be DENIED and the Defendant's motion GRANTED.

PLAINTIFF'S CROSS MOTION

Lisa Lang requests that this Court find liability on the part of the defendant as a sanction for spoliation of evidence. Oral argument was held on March 9, 2010, during which plaintiff's counsel also requested a sanction of an adverse inference by this court so as to require denial of

the Defendant's motion for summary judgment and to also include an adverse inference instruction to the jury.

The undersigned concludes, for the reasons set forth below, that the Plaintiff is not entitled to a grant of liability as against the Defendant as there has been an insufficient showing of conduct on the part of the Defendant that calls for such a drastic sanction. The undersigned further concludes that the Plaintiff is entitled to a limited adverse inference for purposes of the Defendant's motion for summary judgment.

UNDISPUTED FACTS – SPOLIATION CLAIM

On January 4, 2006 Lisa Taylor was driving her Toyota Camry southbound on Interstate 5 near Longview, Washington. She was following a tractor-trailer rig that was driven by Don Long, an employee of the Defendant who started his trip from the Chehalis Fred Meyer distribution center. After traveling approximately 40 miles one of the tires on the trailer, a retread, dropped part of its tread in the roadway and in the path of Lisa Taylor. She swerved to avoid the piece of retread and collided with the center barrier of the freeway. Lisa Taylor was injured as a result of this accident.

Dale Long, as the driver of the tractor-trailer and employee of Market Transport, was required, pursuant to company policy and regulation to conduct a pre-trip inspection and, at the end of the day, to complete a written post-trip inspection. The Federal Motor Carrier Safety Regulations require a pre-trip inspection but it is not required that such inspection be reduced to writing. On the other hand, the post-trip inspection is required to be written. The Driver's Daily Log, which Mr. Long was required to maintain, has space at the bottom of the log for the written post-trip inspection.

On February 6, 2006, Lisa Taylor's attorney sent a letter to Brian Fitzgerald, Chairman and Chief Executive Officer of Market Transport Service. This letter not only put MTL on notice regarding his representation of Lisa Taylor but also specifically requested that MTL preserve documentary evidence including "drivers logs, driver qualification documents, inspection related documents, repair or maintenance documents, documents related to tires, wheels, brakes, bearings, shocks, etc, related to the tractor and/or trailer, and the driver involved in the incident." The last sentence of the third paragraph reads as follows: "Following this notice, the destruction of any such documents will be considered spoliation, and subject to appropriate jury instructions." Dkt. 38 and 36-2, Exh. 1.[1]

As part of her discovery, the Plaintiff requested production of daily inspections records and roadside inspection reports for the vehicle between December 1, 2005 and January 5, 2006. Defense counsel has confirmed that these requested records do not exist. It is undisputed that the retread came off a tire on the trailer being hauled by Don Long and not the tractor. The trailer is owned by Fred Meyer or one of its subsidiaries. The tractor is owned by Market Transport.

The main documents at issue regarding the claim of spoliation relate to the required pre-trip inspection and post-trip inspection.

With regard to a pre-trip inspection, MTL provided the Court with pages 10.3 and 10.4 of its Employee Driver Policy and Procedure Manual (Manual) (Dkt. 43, Exh. A) with a revised date of 4/5/05. This document details what is expected from a driver in the performance of a pre-trip inspection but it too does not require anything in writing.

---

[1] The Court notes that Mr. Patton's Declaration was filed in CM/ECF under Document 38 yet the attachments referenced in his Declaration were filed as attachments to Plaintiff's Response (Document 36). The Court is treating the Exhibits attached to the Response as though they were attached to the Declaration and will be considered for purposes of this motion.

However, the Manual at page 7.1 (Dkt. 36-6) (which shows a "Revised" date of 08/08) sets forth the following requirement:

> **RECORDING A SAFETY CHECK:** It is company policy for our drivers to record a safety check and their location prior to the first driving period of the new day.

There is no information before this Court as to where a driver was to "record" a pre-trip safety check or what was in fact required, by company policy only, to be recorded.

Mr. Leonard, Director of Insurance/Safety for MTL, stated in his declaration that MTL "does not record or memorialize pre-trip inspections." Dkt. 43, p. 3. This statement does not, however, address the required recording of a "safety check." Market Transport concedes that it does not have a recorded safety check by Don Long for January 4, 2006.

With regard to the required post-trip inspection, both federal regulations and company policy require that to be in writing. The MTL Daily Driver's Log (Dkt. 36-8) includes the required post-trip inspection on the bottom half of the Log. It is undisputed that a post-trip inspection is intended to reflect the condition of the trailer at the end of the day. Market Transport concedes that it does not have a written post-trip inspection for the tractor-trailer for the date of January 4, 2006.

Market Transport also does not have a written post-trip inspection for the particular trailer that was involved in the accident for the date of January 3, 2006 or for whatever date it was last driven prior to January 4, 2006.

The evidence before the Court is that the trailer is not owned by MTL but rather by Fred Meyer (or its subsidiary, Distribution Trucking Co.), that their trailers are not driven every day and that they are driven by both MTL drivers and Fred Meyer drivers. Fred Meyer maintained records regarding their trailers and they were provided in discovery.

According to Bruce Leonard, MTL did not track Fred Meyer trailers in its computer system. It therefore did not have the computer ability to determine which of its 400 drivers last pulled this particular trailer or when one of its drivers last pulled this particular trailer prior to the incident date. It also did not have the computer ability to determine when one of its drivers last pulled this trailer prior to January 4, 2006. MTL does acknowledge that the only way it could have obtained this information would have been by a manual review of all of its drivers' daily logs. However, unless it were to find a daily log for January 3, 2006 it would not be able to determine who last pulled this trailer prior to the date of this incident. As a consequence, unless MTL were to manually search all of its driver's logs, it has no way to determine whether it had documents relating to a post-trip inspection that would be relevant to the condition of the trailer on the day of the accident.

MTL points out that there would have been more inspections of the tires following the last post-trip inspection and prior to driving the trailer on the highway. MTL employees, known as hostlers, have the responsibility of moving the trailers to the loading doors of the warehouse. Prior to moving the trailers they are required to check the tires on the trailer. If a problem is observed, the hostler notifies the MTL manager at the distribution facility and Les Schwab would repair the tire as Fred Meyer did not have any repairmen on staff at the facility. The Fred Meyer trailer records would then reflect this repair. The driver is also required to make a pre-trip inspection. And, finally, Les Schwab may have also inspected the tires as Les Schwab personnel inspect tires on the trailers at the Chehalis facility multiple times per week in order to detect and address any visible deficiencies.

Both Mr. Leonard and Kerry Marshall (Fleet Maintenance Manager for Fred Meyer Stores, Inc.) assert, without contradiction, that the records provided by Fred Meyer through

discovery show that there were no known problems with any of the tires on this particular trailer. In particular, the records produced by Fred Meyer do not show any repair or replacement of the particular tire at issue following its installation on this trailer on August 4, 2005.

DISCUSSION – SPOLIATION CLAIM

The Plaintiff's cross-motion for summary judgment for spoliation of evidence is based on the failure of MTL to produce "all daily inspection records, and roadside inspections records." Dkt. 36, p. 2. At oral argument it appeared to the undersigned that the Plaintiff was seeking both pre-trip inspection reports as well as the post-trip inspection report completed prior to January 4, 2006.

MTL had a duty to preserve evidence when it had notice of potential claims. Arguably that notice was on the date of the accident but at least no later than its receipt of the letter from Attorney Thomas C. Patton addressed to the Chairman and CEO of MTL and dated February 6, 2006. MTL is required, by regulation, to maintain driver daily logs for a period of six months so Mr. Long's daily log should have been available on the date MTL received notice from Mr. Patton.

In addition, MTL asserts that there is no written pre-trip inspection report and therefore it could not have produced a document which has never existed. To the extent that the requested discovery relates to the pre-trip inspection report that is not required to be reduced to writing, the Defendant is correct that it cannot produce something that did not exist. However, as noted above, the MTL Manual does require the driver to "record" a safety check and the driver's location. The Court has not been provided any explanation as to what is meant by this specific requirement.

The additional document being sought by the Plaintiff is the last post-trip inspection relating to this trailer that was completed prior to January 4, 2006.

SPOLIATION – LEGAL REQUIREMENTS

Put simply, spoliation is the "intentional destruction … of evidence." Black's Law Dictionary 1531(9th ed. 2009). Both parties agree that a spoliation sanction is only appropriate when the Court finds (1) the missing evidence is important or relevant and (2) the party acted in bad faith or conscious disregard of the importance of the evidence. *Henderson v. Tyrrell*, 80 Wn. App. 592, 607, 910 P.2d 522 (1966).

"It is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Kronisch v. United States*, 150 F.3d 112, 126 (2nd Cir. 1998). *See also Ritchie v. United States*, 451 F.3d 1019, 1024 (9th Cir. 2006). A remedial rationale for the adverse interest is that "an adverse inference should serve the function, insofar as possible, of restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Kronisch* at p. 126.

The party seeking the inference must show that the destroying party had an obligation not to destroy the evidence. *Ritchie* at p. 1024, fn. 9. In this case, it is clear that the Defendant was placed on notice regarding the accident and directed to preserve relevant evidence in its possession. At a minimum, this would include Dale Long's record of his pre-trip safety check and the post-trip inspection report on January 4, 2006.

With regard to a written post-trip inspection report prior to January 4, 2006, the Plaintiff has failed to present any evidence upon which to base a conclusion that the Defendant ever had

control over such a document.  It is undisputed that the trailer is owned by Fred Meyer or its subsidiary and that they maintained records regarding their trailers.  There is no evidence before the Court as to who last hauled this particular trailer or when it was last hauled prior to January 4, 2006.  Because there is no showing, or even inference, that the Defendant last had control of the trailer prior to the incident the Court cannot consider the failure of the Defendant to produce a post-trip inspection as evidence of spoliation.

"Once a court has concluded that a party was under an obligation to preserve the evidence that it destroyed, it must consider whether the evidence was intentionally destroyed, and the likely contents of that evidence." *Kronisch* at p. 127.

Unlike many of the cases cited to this Court, neither party has offered an explanation as to why the documents were not preserved.  The plaintiff has presented no evidence that would allow a conclusion or even an inference that the documents were intentionally destroyed in order to avoid dealing with them at a trial.  On the other hand, the Defendant was on notice and now has failed to produce the documents.   The undersigned can conclude only that the failure to produce documents was the result of negligence, and not willful conduct, on the part of the Defendant.  This lack of clearly willful conduct leads this Court to conclude that the initial sanction requested by the Plaintiff – a finding of liability against the Defendant – is not appropriate.

Finally the Court must determine whether the absent documents would be relevant to the contested issue.  The two absent documents which the Court finds were clearly in the control of the Defendant when they received the letter from Mr. Patton are (1) the pre-trip recorded safety check and (2) the post-trip inspection by Don Long.

It is difficult to see how the post-trip inspection by Don Long would be relevant to the issues before this Court. The purpose of the post-trip inspection is to document the condition of the tractor and trailer at the end of the day. This would have been after the tire was replaced and would not contain any information regarding the condition of the tire at the start of the trip on January 4, 2006.

It is clear that the federal regulations do not require a pre-trip inspection to be in writing and that the company policy also does not require it to be in writing. Therefore, the Defendant cannot be held accountable for failing to produce something that never existed. However, the same cannot be said about the Defendant's policy that requires a driver to record a safety check. The difficulty that arises with regard to this requirement is that there is a complete lack of evidence presented to the Court as to what this internal company policy requires.

A party who wishes to benefit from an adverse inference has the obligation to prove not only its entitlement to the inference but to also provide some evidence to the court to support the specific inference that should be considered on summary judgment. The plaintiff has provided no evidence as to what information, if any, was to be included in the recorded safety check. This evidence would have been available to the Plaintiff through a deposition of an appropriate employee of the Defendant or even of the driver, Don Long. This is not a case in which the lack of a document showing a recorded safety check prevents the Plaintiff from determining what the safety check requires, where it should have been recorded and where the document was maintained. Due to this lack of information, which would have been accessible to the Plaintiff, the undersigned concludes that for purposes of these summary judgment motions, the Plaintiff is entitled to an adverse inference only that a safety check was not recorded.

The Court finds that this inference must be limited in light of the fact that there were other sources of information available regarding what was actually expected to be done with regard to a pre-trip safety check. The undersigned is unwilling to extend the inference to include the assumption that the pre-trip inspection was not done and that had it been done Mr. Long would have or should have seen an obvious defect on the tire. There is a total lack of evidence before this court to support that extended inference. The limited evidence is that MTL requires a driver to "record a safety check" pre-trip and that no document has been provided regarding this safety check being recorded. The Plaintiff presented no evidence as to what it means to "record a safety check" and nothing has been presented to the Court for it to conclude that failure to "record a safety check" means that a required pre-trip inspection was not done.

While a document showing a pre-trip safety check is relevant to the issues presented, with the lack of information available to the Court, the most it can conclude is that the document could be used for impeachment purposes. However, the driver of the truck was not deposed so the Court is not aware of his expected testimony in this regard.

In conclusion, the Court is granting the Plaintiff's cross-motion to the extent that it will consider, as a limited adverse inference in addressing the Defendant's motion for summary judgment, that Don Long did not record a safety check.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v.*

*O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson,* 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F.3d 337, 345 (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *Id. at 345; Blair Foods, Inc. V. Ranchers Cotton Oil,* 610 F.2d 665, 667 (9th cir. 1980).

DEFENDANT'S MOTION

As noted by MTL, the Plaintiff did not present argument in response to their motion for summary judgment. Rather, the Plaintiff relied on her cross-motion for summary judgment which requested a finding of liability. That part of the Plaintiff's cross-motion has been denied. However, the Court did conclude that the Plaintiff is entitled to the limited inference, for

purposes of this summary judgment motion only, that Don Long did not record a safety check as required by the Defendant and set forth in the Manual.

In addition to the facts set forth above, the evidence shows that the accident was investigated by Trooper Kingley of the Washington State Patrol. As part of his investigation he noted that the tires were legal. The tractor involved in this accident was owned by MTL and operated by its former employee, Dale Long. The trailer that Mr. Long was pulling was owned and maintained by Fred Meyer. Fred Meyer's maintenance records show that the trailer received an annual inspection on August 4, 2005 and that all of the tires on the trailer were replaced at that time. The tire in question travelled approximately 22,000 miles after being installed on the trailer to the time of the accident.

Dale Long is no longer an employee of MTL and there is no evidence as to whether Mr. Long did or did not conduct a pre-trip inspection. However, based on the adverse inference, the Court assumes that a safety check was not recorded.

MTL's expert witness, Dr. John Daws, Ph.D., P.E., concludes that the tire in question was "well below the mileage where it would have been expected to be worn out." He also notes that the use of retread tires is common in the trucking industry and that there is nothing unsafe about using retreads. He also concludes that the driving speed indicated by the plaintiff of 70 m.p.h. is appropriate as the tires are designed to withstand speeds of at least 75 m.p.h. Mr. Daws' conclusions are not contradicted by Plaintiff's expert, Mr. Norton.

The tire and the retread carcass were not retained so Mr. Daws is unable to determine the precise cause of the tire failure. However, based on the evidence he has reviewed he reaches the conclusion that the most likely cause of the failure, on a more probable than not standard, was a puncture to the tire that occurred during the course of the trip which resulted in the air out of the

tire and a separation of some part of the tire. This conclusion is based on the fact that the Fred Meyer work order noted that the tire was found to be flat after the accident and the further conclusion that neither a retread detaching from a tire nor a fundamental breakdown in the tire's structure, which would result in a belt-leaving-belt type separation would cause a tire to go flat. Mr. Norton does not contradict this conclusion.

Both parties filed a copy of the Plaintiff's expert's written report (Dkt. 34, Exh. H and Dkt. 36-9). The Court notes that the Plaintiff did not rely on this report by R.H. Norton in her Reply to the summary judgment motion of MTL. However, review of this report, shows that it does not contain any opinions or conclusions regarding negligence on the part of Dale Long or MTL. At the most Mr. Norton concludes that a "[v]isual inspection of an impending catastrophic tire failure could have been discovered had a thorough pre-trip been performed." This assumes, without foundation, that something would have been obvious on visual inspection. There is no evidence nor is there a reasonable inference available to support this assumption. In addition, the Court notes that Mr. Norton's opinion is based on a possibility – "could have been discovered." He does not conclude that a visual inspection more probably than not would have discovered an impending catastrophic tire failure.

Based on the uncontroverted facts presented to the Court, and taking into consideration the adverse inference that Mr. Long did not record a safety check, this Court finds that the Defendant is entitled to summary judgment.

"We do not suggest that the destruction of evidence, standing alone, is enough to allow a party who has produced no evidence – or utterly inadequate evidence – in support of a given claim to survive summary judgment on that claim." *Kronisch* at p. 128. The Defendant has presented uncontroverted expert testimony regarding the cause of this accident, which cause

precludes a finding of negligence on the part of the defendant. The limited inference considered by this court for purposes of this motion is insufficient to overcome the uncontroverted expert opinion.

CONCLUSION

The Plaintiff's Cross-Motion for Summary Judgment is DENIED. Dkt. 36.

The Defendant's Motion for Summary Judgment is GRANTED. Dkt. 33.

Dated this 12th day of March, 2010.

Karen L. Strombom
United States Magistrate Judge